## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

JOHNNY L. MOSLEY,

   Plaintiff,

vs.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

   Defendant.

No. C11-3006-PAZ

**MEMORANDUM OPINION AND
ORDER**

---

### *Introduction*

 The plaintiff, Johnny L. Mosley, seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Mosley contends that the administrative record ("AR") does not contain substantial evidence to support the Commissioner's decision that he is not disabled. For the reasons that follow, the Commissioner's decision is **reversed**, and this matter is **remanded** for an award of benefits.

### *Background*

 Mosley was born in 1968; completed high school; and previously worked as an assistant manager, security guard, roofer, laundry worker, collections worker, and meat laborer. AR 22, 47, 75-76, 180, 189, 262-63. On September 24, 2007, Mosley applied for DIB and SSI, alleging disability beginning on June 30, 2007 (later amended to

November 9, 2007), due to glaucoma, high blood pressure, asthma, and acid reflux.  AR 14, 36, 126-38, 185.  The Commissioner denied Mosley's applications initially and again on reconsideration; consequently, Mosley requested a hearing before an Administrative Law Judge ("ALJ").  AR 84-96.  On September 22, 2009, ALJ Jo Ann L. Draper held a hearing in which Mosley and a vocational expert ("VE") testified.  AR 29-83.  On February 9, 2010, the ALJ issued a decision finding Mosley not disabled since the alleged onset date of disability of November 9, 2007.  AR 11-28.  Mosley sought review of this decision by the Appeals Council, which denied review on December 20, 2010.  AR 1-10.  The ALJ's decision thus became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

On February 18, 2011, Mosley filed a complaint in this court seeking review of the ALJ's decision.  On June 13, 2011, with the parties' consent, Judge Mark W. Bennett transferred the case to the undersigned for final disposition and entry of judgment.  The parties have briefed the issues, and the matter is now fully submitted.

### Summary of Evidence

**A.**     *John Birkett, M.D.*

On January 2 2008, John Birkett, M.D., Mosley's family physician, stated the following in a letter:

John Mosley is unable to work due to the following diagnoses:

1.     Moderate to large disc protrusion at L5-S1 eccentric left, with left posterolateral displacement and effacement of the left S1 nerve root. Moderate effacement of the thecal sac
2.     Small central disc protrusion at L4-L5
3.     Left foraminal disc protrusion at L3-L4, contacting the left L2 nerve root.

> 4.   Right lateral foraminal dis[c] protrusion at L3-L4, contacting the right
>      L3 nerve root.
>
> I have referred Mr. Mosley to Dr. David Boarini, neurosurgeon, in Des
> Moines for a consultation at the end of this month.   Until any treatment can
> be provided for Mr. Mosley I feel that it is in his best interest not to work
> to prevent any further injuries.

AR 389.

On March 17, 2008, Gregory Olson, M.D., an ophthalmologist, stated the

following in a letter:

> I have attended John Mosley Jr for chronic open angle glaucoma since
> November 2007.   He has seen Dr. John Trible, our glaucoma subspecialist,
> in December.   Mr. Mosley has very severe glaucoma and has already
> suffered some degree of vision loss from this.   Careful monitoring of drops
> are necessary.   Surgery may well be needed to save the patient's vision in
> the future.
>
> This is an on-going problem which will require permanent drop treatment
> and again surgery may be necessary.

AR 392.

## B.   *Joseph Latella, D.O.*

On April 25, 2008, Joseph Latella, D.O., performed a consultative examination of

Mosley.   AR 396-401.   The ALJ summarized Dr. Latella's findings as follows:

> The claimant, relative to his glaucoma, related that he does not drive at night
> and wears sunglasses.   Upon examination, the claimant had decreased range
> of motion of the back and some sensory loss of the left lower leg.   His gait
> was described as normal but that he pitches his right leg and foot laterally.
> He has a disc herniation problem of L4-5 that is causing him sciatic
> neuralgia problems on the left side at this point in time.   Although the
> claimant has the above current evidence of a herniated disc, the claimant
> continues to be relatively active by other accounts in the record.   Similarly,
> while there is definite abnormality with his lumbar spine, his straight leg

3

raising and Patrick-Febre signs are negative.  He can walk somewhat on the heels of his feet and the tips of his feet.  The muscle tone on the left calf is poor but he does not drag the leg nor does he have any urinary symptoms.  His neurological and cerebellar functions were all normal.  His skin is pink and dry, with no ulcerations or cynanosis noted.  The cerebellum and the cranial nerves III-XII are intact.  The second cranial nerve is showing ill effects of glaucoma.  The ears, nose and throat were all normal.  His thyroid is small and non-tender with no carotid bruits or venous distentions noted.  The claimant's heart has a regular rate and rhythm, devoid of any sternal heaves, gallops, murmurs or bruits.  The lung sounds today are clear, with no wheezing, bronchi or rules.  The abdomen was flat and there were good bowel sounds with no hernias or abdominal bruits noted.  The claimant's extremities showed no gross abnormalities, cyanosis or ecchymosis.

AR 19-20.

## C.   *Stephanie Nelson, D.O.*

On April 30, 2008, Stephanie Nelson, D.O., a state agency medical consultant, assessed Mosley's physical residual functional capacity ("RFC").  AR 485-95.  Dr. Nelson opined that Mosley could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper and lower extremities.  AR 486.  Mosley could occasionally climb ramps and stairs (but never ladders, ropes, or scaffolds), balance, stoop, kneel, crouch, and crawl.  AR 487.  Although Mosley's color vision and field of vision were limited, he had no manipulative, communicative, or environmental limitations other than avoiding concentrated exposure to hazards such as machinery and heights.  AR 488-89.

Dr. Nelson found that "Dr. Birkett's statement was considered but reserved to the Commissioner.  It is not totally consistent given that the claimant is working part-time."  AR 491.  She further remarked:

The claimant continues to be followed and treated relative to his bilateral glaucoma. He continues to have preserved central visual acuity with 20/25 OD and OS. He does have a visual field defects [sic] though not at or approaching listing level. Because of the hemianopsic appearance particularly on the left, the claimant has undergone MRI of the head which was unremarkable. Therefore the changes are considered to be glaucomatous in nature. Humphrey visual fields were obtained on 3/31/08. The better eye is the left eye. This is characterized as a hemianopsic shaped field. This reviewer's not going to calculate visual efficiency given it exceeds validity measures.

Apparently, the claimant's medical following is quite limited due to financial constraints and no insurance. The claimant's local physician is Dr. Birkett. A 12/07 entry indicates low back pain. Claimant obtained an MRI of the lumbar spine which shows herniated disc at L5-S1 to the left with displacement and effacement of the left S1 nerve root. Dr. Birkett made the statement that the claimant was unable to work on this basis until he was treated by the neurosurgeon Dr. Boarini. Although the claimant makes some reference to needing surgery, report of contact with the claimant indicates that he has not been to see Dr. Boarini, has no surgery scheduled and has not been back to Dr. Birkett because of financial constraints and lack of insurance. As such a [consultative examination] was undertaken with Dr. Latella on 4/25/08. The claimant relative to the glaucoma related that he does not drive at night and wears sunglasses. He had decreased range of motion of the back and some sensory loss of the left lower leg. His gait was described as normal but that he pitches his right leg and foot laterally.

Claimant's updated [activities of daily living] information includes the report of low back pain. He continues to work four hours per day doing preparatory work at a pizza house. He reports back pain limits long walking [and] that he can walk two blocks. He also indicates that it prevents him from picking up boxes off the floor.

Discussion/Conclusion: Medical records are consistent. There are no [blatant] inconsistencies relative to claimant's impairments but the impairments are not disabling as assessed by this program. From 6/30/07

until 12/07, the not-n-severe [sic] assessment rendered at the initial level is affirmed as written.

There is a relative paucity of information by which to assess the back problem though clearly the claimant has a severe [medically determinable impairment]. Although the claimant has current evidence of a herniated disc, the claimant continues to be relatively active. Available information indicates ability as outlined. The claimant has good visual acuity but does have restricted fields. This reviewer's not calculating [visual efficiency] as validity testing was not met but in general with good central acuity and a hemianopsia in the better eye, the visual efficiency would be approximately 50%. This RFC is in effect since 12/07.

AR 492.

### D.   Melanie Hennings

On August 6, 2009, Melanie Hennings, Mosley's previous supervisor, completed an "Employer Questionnaire." AR 277-79. She had worked with Mosley "several days a week" and did not believe that he could work eight hours a day and five days a week because of his "inability to stand for long periods of time" and to lift repetitively over 25 pounds, and his difficulty "seeing numbers." AR 277. Mosley was allowed to take frequent rest periods and received "special assistance from other employees in performing the job" because he had a "hard time seeing to run registers and reading scales," needed assistance with lifting, and could not stand "for long periods of time." AR 278.

### E.   Physicians Eye Clinic

In a letter dated November 19, 2009, to Mosley's attorney, Valerie Kounkel, D.O., stated the following:

Historically, Mr. Mosley was diagnosed with glaucoma in September of 2007 and placed on different eye medications to control the disease. Upon last review of his visual field in November 07, it showed significant visual field loss in the right eye and advancing visual field loss in the left eye. He did have an MRI performed which was negative. His visual

6

acuities along the way have been very stable in the 20/20, 20/25 range in both eyes. His intraocular pressures have fluctuated and stabilized towards the last of the records around 13 and he was going to be evaluated by a glaucoma specialist. His optic nerve appearance shows very advanced glaucomatous damage in the right eye with a 0.9 cup and a 0.75 cup in the left eye which is advancing.

Based on all these findings, at this point he has end-stage glaucoma in the right eye and advanced glaucoma in the left eye. Since his last visual field of his left eye, I would expect that that has advanced even more. As far as his vision and being able to work, he has very limited vision in his right eye based on his visual field. He has more of what we call an island vision or tunnel vision. His central vision is the only thing that has maintained based on his records. The left eye also showed significant loss of the visual field but again I would expect that that has changed since that time.

AR 472.

## F.   *Plaintiff's Testimony*

As set forth in his brief, Mosley's testimony was as follows:

[He] worked part-time at Papa Murphy's Pizza. He generally was scheduled to work 9:00 a.m. to 2:00 p.m. He was usually done by noon as there was not that much work. He generally sat while working. Duties included cutting vegetables with assistance and answering the phone. His supervisor assisted him by placing vegetables in the chopper. Mr. Mosley had a job because he helped the owner open the business. The owner did not want to let Mr. Mosley go because he knew there were no other jobs [Mosley] could perform.

Despite taking Tramadol and ibuprofen for pain, [Mosley] continued to be in pain. Mr. Mosley also used an albuterol inhaler. He has had the pain for two to [three] years. Epidural steroid injections did not help. He needed to alternate positions, standing for twenty to thirty minutes, then sitting for thirty to sixty minutes. After sitting for an hour, he lost feeling in his legs. After work, he usually needed to [lie] down. At times, he lay down but [could not] sleep because of the pain.

[Mosley] also described his visual problems.  In the morning, he had to wait fifteen minutes before getting out of bed because everything was blurry.  He always saw "little dots and red and blue."  He [could] read "big writing."  He had trouble seeing things on the side or "up and down."  He [could] "sort of" see straight in front.  Mr. Mosley completed forms for his disability claim by getting up close to the paper.  The closer he was to something, the better he could see it.   [Mosley] had limited peripheral vision:

> Q:   Is this the stuff where you can't see, you can't see on the side?
> A:   I can't see on the sides–
> Q:   Right.
> A:   –or up or below me.
> Q:   Right.  Because what you can see in front of you, the vision really is pretty normal.
> A:   Yeah.
> Q:   But it's, so, it's your field of vision that's basically been affected.
> . . . .
> A:   It's like a blind spot.  I got, like, a blind spot on the left side of my left eye, which is really bad.

[Mosley] also had dry eyes; he took three eye drops.  He took the drops several times a day, as needed, and the drops made his vision a little clearer.

Mr. Mosley was told not to drive.  He did not go to church or socialize, though some friends came over to visit.  [He] did not do any household chores.

Doc. No. 12 at 12-14 (citations omitted).

The ALJ summarized Mosley's testimony as follows:

The claimant alleges he is unable to work due to a combination of impairments, which prevent him from performing substantial and gainful activity.  The claimant reports he is limited in his ability [to] work in that he cannot see small numbers/letters very well (he squints but cannot see very well he says).  Similarly, he notes that he cannot see well enough to drive.

8

He testified that he has chronic dry eyes and has to use eye[] drops to assist the impairment.  The claimant testified and reports that he experiences aching back pain, which is not helped by medications such as ibuprofen and past epidural shots.  Movement and cold weather exacerbate his pain, he notes.  He states that he can stand for about 1-2 hours before needing to take a break; if he stands too long he will fall.  He also testified that he can sit for about 1 hour before needing to stand up because his legs will go numb.

AR 18.

### G.  *Vocational Expert Testimony*

The VE classified Mosley's past work as follows: (1) assistant manager, skilled and light; (2) security guard, semi-skilled and sedentary as performed; (3) roofer, skilled and heavy as performed; (4) laundry worker, unskilled and medium; (5) collections worker, skilled and light as performed; and (6) meat laborer, unskilled and heavy.  AR 75-76.

The ALJ posed the following hypothetical to the VE:

Could you please assume that we have a hypothetical individual, and this hypothetical individual, this first hypothetical individual, has exertional limitations that would limit them to no more than sedentary work, specifically standing and walking no more than two hours in an eight-hour day; sitting six to eight hours in an eight-hour workday; lifting and carrying no more than 10 pounds, and that would be occasionally; the lifting would be less than 10 pounds frequently; this individual could only occasionally climb, balance, stoop, kneel, crouch, crawl; this individual should only occasionally be exposed to extremes in temperature; there should be no exposure to hazardous working conditions such as working around heights or moving machinery; and this individual shoulder never climb ropes, ladders, or scaffolds.  In addition, this individual would have some field-of-vision issues, so could not perform a job requiring a full field of vision.  I have tried to also account for that with no exposure to hazardous working conditions, so there would be no driving jobs or working around machines that moved because of – could not perform any job requiring a normal field of vision, or a job that could not be performed by someone who is colorblind.  And I'm not sure exactly what those limitations are, but certainly if they needed to know green from red and could not, they would

> not be able to perform that particular job.  So with those limitations, could this hypothetical individual perform any of the work that's been performed in the last 15 years?

AR 76-77.  The VE testified that the individual could perform Mosley's past work as a collections worker.  AR 77.  Skills from this job would transfer to sedentary jobs such as a referral and information aide, electronics component assembler, or food checker.  AR 77-78.  Furthermore, such an individual could perform Mosley's past work as an assistant manager and collections worker if that individual were limited exertionally to light work.  AR 78.  These hypothetical individuals could not perform these jobs, however, if they had problems "with pain and fatigue so that either one of [the ALJ's] hypothetical individuals, either at the sedentary or light level, were unable to maintain the necessary stamina to complete a full eight-hour workday, five days a week, 40 hours a week, without daily frequent rest periods, breaks, [or] naps."  AR 78-79.  Finally, in response to a hypothetical question posed by Mosley's attorney, the VE testified that an individual could not perform any sedentary work if that individual

> would need to stand for five to 10 minutes before sitting back down.  In addition, they would be limited in near acuity . . . , meaning that . . . any type of vision requirements would need to be . . . , as [Mosley] testified to the TV, 12 inches or less close to him in order to see clearly.

AR 79-80.  According to the VE, "the fact that 12 inches, and having to be that close to whatever you're working on, precludes those jobs."  AR 80.  "Competitive work would not be possible" if a hypothetical individual as stated above would, in addition, "have to slow down to put eye drops et cetera in his eyes."  AR 81.

### *Summary of ALJ's Decision*

On February 9, 2010, the ALJ found that Mosley (1) had not engaged in substantial gainful activity since the alleged onset date of disability of November 9, 2007; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) was able to perform his past relevant work as a collections worker. AR 16-22. Alternatively, the ALJ found that Mosley could perform sedentary-level work in the national economy. AR 22. The ALJ accordingly found that he was not disabled from November 9, 2007, through the date of the ALJ's decision. AR 23.

In so finding, the ALJ found that Mosley had the following RFC:

[T]he claimant has the residual functional capacity to perform sedentary work . . . except that the claimant only occasionally climb, balance, stoop, crouch, crawl and kneel; he should never have to climb ropes, scaffolds or ladders. Further, he should only occasionally be exposed to extreme temperatures. Similarly, he should not be exposed to hazardous conditions, such as heights or moving machinery. The claimant does not have a full field of vision and [] so he could not do a job that requires it or non-colorblindness [] and cannot drive on the job.

AR 17.

Regarding Mosley's credibility, the ALJ found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment." AR 18. In this regard, the ALJ found as follows:

> At one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records or in the claimant's testimony), the claimant has reported the daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations with allegations of disability. The claimant has no problems with personal care, is capable of preparing meals, and performing house and yard work. Further, the claimant is able to get around town on his own, and handle shopping responsibilities and financial matters, as such needs may arise. The claimant also works part-time, which indicates that despite his vision issues, he retains sufficient functioning in his daily activities – at least with respect to expectations from outside his family. In addition, the undersigned notes that the claimant has a child at home, which can be very demanding both physically and emotionally. Overall, the claimant's reports of limited daily activities are considered to be outweighed by the other factors discussed herein.
>
> While the claimant carries a variety of diagnosed conditions, few functional limitations result from these impairments. The claimant takes medications appropriate to his conditions, which should successfully treat his conditions (were he compliant with the medications) without materially adverse side-effects. Further, while the claimant testified that pain medications such as ibuprofen do not help his back pain, the undersigned notes the relative low strength of his over the counter medications may indicate that his symptoms are not as severe as alleged in connection with his application and appeal. Moreover, the claimant has not required long-term intensive treatment for any of his conditions. Lastly, despite his allegations of limited vision, the undersigned notes the claimant was able to read and complete multiple forms in the record without assistance.

AR 20 (internal citations omitted).

Regarding the evidence from Mosley's supervisor, Melanie Jennings, the ALJ found as follows:

> The Employer Questionnaire completed by Melanie Hennings, the claimant's supervisor, does not establish that the claimant is disabled. Since Ms. Hennings is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the

frequency or intensity of unusual moods or mannerisms, the accuracy of the testimony is questionable.  Further, given the lack of medical training on Ms. [Hennings's] part, it is very likely her opinions are based upon the subjective complaints/allegations of the claimant.  In addition, great weight cannot be given to such third party statements because they, like the claimant's allegations, are not consistent with the objective medical evidence as a whole.

AR 21.

The ALJ also weighed the opinion evidence in the record, finding as follows:

The undersigned notes that Dr. Birkitt [sic], as discussed above, opined that the claimant was unable to work until he received appropriate treatment/evaluation for his back.  The undersigned notes that such opinion is not consistent with the other physicians' opinions on the record, as a whole.  Similarly, the restrictions he placed upon the claimant are not supported by the medical evidence as a whole.  In fact, the specific treatment notes in question is hi[s] referral of claimant to another doctor specialists [sic], which seems to indicate that he is aware that other doctors in such specializations may have a better understanding of the claimant's impairments, and therefore, the proper restrictions, if any, that should be placed upon the claimant.  Also, the fact that the claimant did not seek further treatment suggests that his symptoms are not as severe as alleged in connection with his application and appeal.  The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.  Further, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she [sympathizes] for one reason or another.  Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their [patients' requests] and avoid unnecessary doctor/patient tension.  While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current

13

case.  As such, the undersigned affords the opinion of Dr. Birkitt [sic] little weight.

AR 21.

> Aside from Dr. Birkitt [sic], discussed above, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision.  Their respective opinions are internally consistent as well as consistent with the evidence as a whole.  As there is no objective evidence contradicting the findings, the opinions are entitled to great weight.  In addition, the residual functional capacity conclusions reached by the physician employed by DDS also supported a finding of "not disabled."  Although the physicians are non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, their opinions do deserve substantial weight in the current instance, particularly because in a case like this there exist[s] a number of other reasons to reach similar conclusions (as explained throughout this decision).

AR 22.

### Disability Determinations and the Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

14

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work."  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

15

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that

16

there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### The Substantial Evidence Standard

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence on the record as a whole. *Page*, 484 F.3d at 1042. This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Kluesner v.*

*Astrue*, 607 F.3d 533, 536 (8th Cir. 2010); *see Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that supports the Commissioner's decision as well as the evidence that detracts from it." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)

("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## Discussion

Mosley maintains that the ALJ failed to evaluate properly his subjective allegations. Doc. No. 12 at 23-27. The Commissioner asserts that the ALJ properly considered inconsistencies between Mosley's subjective allegations and the objective medical evidence. Doc. No. 14 at 19-25.

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In this regard, an ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.* When evaluating a claimant's subjective complaints, the ALJ must consider 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii) (codifying *Polaski* factors). Other factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Thus, although an ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010), such evidence is one factor that the ALJ may consider. *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008); *see Jones*

*v. Astrue*, 619 F.3d 963, 975 (8th Cir. 2010) (noting that an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary). Further, an ALJ need not explicitly discuss each *Polaski* factor; it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints. *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009); *see Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth.").

In assessing Mosley's credibility, the ALJ first acknowledged the above factors. AR 17 (citing 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p). The ALJ then pointed to the lack of objective medical evidence in discounting Mosley's subjective complaints. AR 18-21.

The ALJ found that Mosley's activities of daily living belied his claim of disability. AR 20. A claimant need not prove he is bedridden or completely helpless to be found disabled. *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005). Rather, "[i]n evaluating a claimant's RFC, consideration should be given to the quality of the daily activities and the ability to sustain activities, interests, and relate to others *over a period of time* and the frequency, appropriateness, and independence of the activities must also be considered." *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007). As noted above, the ALJ found that Mosley

> has reported the daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations with allegations of disability. The claimant has no problems with personal care, is capable of preparing meals, and performing house and yard work. Further, the claimant is able to get around town on his own, and handle shopping responsibilities and financial matters, as such needs may arise.

AR 20.

The Eighth Circuit, however, has "repeatedly stated that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Hogg v. Shalala*, 45 F.3d 276, 278-79 (8th Cir. 1995) (citing *Harris v. Sec'y of Dep't of Health & Human Servs.*, 959 F.2d 723, 726 (8th Cir. 1992); *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)); *accord Ford*, 518 F.3d at 983 ("We also believe that the ALJ erred in concluding that [the claimant's] description of her daily activities worked against her. She consistently reported being able to do such things as washing a few dishes, ironing one or two pieces of clothing, making three or four meals each week, and reading, and we do not think that these activities are inconsistent with her complaints of pain or with her contention that she is unable to hold a full time job."); *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007); *Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work." (citing *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998))); *Kelley*, 133 F.3d at 589 ("[A] person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity."); *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996) ("To establish disability, [the claimant] need not prove that her pain precludes all productive activity and confines her to life in front of the television."); *Ekeland v. Bowen*, 899 F.2d 719, 722 (8th Cir. 1990) ("This court often has noted . . . that a claimant's ability to perform household chores does not necessarily prove that claimant capable of full-time employment.").

The ALJ further found that Mosley "also works part-time, which indicates that despite his vision issues, he retains sufficient functioning in his daily activities – at least

with respect to expectations from outside his family." AR 20. However, the VE testified that the accommodations provided by Mosley's employer were "probably going above and beyond what would normally be required in a work setting" (AR 80). *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[W]e are hard-pressed to understand how [the claimant's] brief, part-time employment supports a conclusion that she was able to work a full-time job, week in and week out, given her limitations."); *Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) ("[The claimant] was able to work for [her employer] part-time only because he was a friend who tolerated frequent breaks and absences that an ordinary employer would have found unacceptable. This does not contradict her claim of disability."). In addition, the ALJ noted that Mosley "has a child at home, which can be very demanding both physically and emotionally." AR 20. However, child-rearing does not refute a claimant's allegation that he is unable to work. *See Tang v. Apfel*, 205 F.3d 1084, 1086 (8th Cir. 2000) ("While [the claimant] may be able to prepare his children for school and to do the laundry on a daily basis, it does not follow that [the claimant] is able to perform light or sedentary work continuously throughout the working day."). The ALJ thus erred in discrediting Mosley's credibility on the basis of his daily living activities.

The ALJ finally found that, "despite his allegations of limited vision," Mosley "was able to read and complete multiple forms in the record without assistance." AR 20. The ALJ did not, however, point to any clear evidence that Mosley had no assistance in completing the forms nor to any evidence of the time it took him to complete the forms despite his vision problems. Rather, Mosley testified that he needed to hold objects close to his face to be able to see them clearly (AR 54-55) and that his vision problems forced him to watch television no further than twelve inches from the screen (AR 79). According to the VE, such vision problems precluded Mosley from performing any work. AR 79-80.

The court thus remands this case for an award of benefits.  *See Holmstrom v. Massanari*, 270 F.3d 715, 722 (8th Cir. 2001) ("[The claimant] . . . did establish that he is disabled.  In answer to a hypothetical posed by [the claimant's] counsel, the vocational expert testified that there would be no jobs in the national economy for [the claimant] if he needed to lie down at times each day.  As [the claimant] has established his disability, it is unnecessary that this case be remanded to the Commissioner for further proceedings except to award benefits."); *Taylor v. Chater*, 118 F.3d 1274, 1279 (8th Cir. 1997) ("Although remand to the district court with instructions to remand to the Commissioner for further proceedings is the normal remedy, remand is not necessary where the record overwhelmingly supports a finding of disability.  Here, when [the claimant's] counsel presented a hypothetical to the vocational expert that properly characterized [the claimant's] disabilities, the expert testified that there were no jobs in the national or regional economy that such a hypothetical individual could perform.  [The claimant] is thus disabled within the meaning of the Social Security Act." (citation omitted)).

In sum, substantial evidence in the record as a whole does not support the ALJ's discounting of Mosley's credibility.  Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** for an award of benefits.  *See McKarnin ex rel. McKarnin v. Astrue*, No. 07-0071-CV-W-REL-SSA, 2008 WL 625031, at *21 (W.D. Mo. Mar. 4, 2008) (reversing and remanding for award of benefits because substantial evidence did not support ALJ's finding that claimant's allegations were not credible).  Because the court remands this case for a determination and award of benefits, it need not address Mosley's other arguments.  *See Burress*, 141 F.3d at 881 & n.11.

*Conclusion*

For the reasons stated above, the Commissioner's decision is neither supported by substantial evidence in the record as a whole nor based on proper legal standards. Accordingly, it is ordered that the Commissioner's decision be **reversed**, this case be **remanded** for an award of benefits, and judgment be entered in favor of Mosley and against the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 29th day of March, 2012.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

24